1
2
3
4
5
6
7
8

UNITED STATES DISTRICT COURT

9

NORTHERN DISTRICT OF CALIFORNIA

10

SAN JOSE DIVISION

11
12

OMAR GOMEZ,

Case No. 19-CV-05266-LHK

13

Plaintiff,

**ORDER DENYING DEFENDANTS'
MOTION FOR SUMMARY
JUDGMENT**

14

v.

15

JORDAN FACHKO, et al.,

Re: Dkt. No. 50

16

Defendants.

17
18

Plaintiff Omar Gomez brings this excessive force action against the City of Santa Clara

19

and City of Santa Clara police officer Jordan Fachko ("Defendants") under 42 U.S.C. § 1983. ECF

20

No. 1. Before the Court is Defendants' motion for summary judgment, ECF No. 50.[1] Having

21

considered the parties' submissions, the relevant law, and the record in this case, the Court

22

DENIES Defendants' motion for summary judgment.

23
24
25

[1] Defendants' motion for summary judgment contains a notice of motion that is separately
paginated from the memorandum of points and authorities in support of the motion. Civil Local
Rule 7-2(b) provides that the notice of motion and the points and authorities in support of the
motion must be contained in one document with a combined limit of 25 pages. *See* Civ. Loc. R. 7-
2(b).

26
27
28

# I.    BACKGROUND

## A.  Factual Background

This case arises from a police shooting in the twilight hours of October 21, 2017. Because Defendants move for summary judgment against Plaintiff Omar Gomez, the Court must recount the following facts in the light most favorable to Gomez. *See Orn v. City of Tacoma*, 949 F.3d 1167, 1171 (9th Cir. 2020) (at summary judgment on qualified immunity, requiring the Court to credit plaintiff's version of events unless it is "blatantly contradicted by the record").

At about 1:15 a.m. on October 21, 2017, Santa Clara police officer Jordan Fachko learned that the Sunnyvale Department of Public Safety was reporting a stolen Honda Civic. Fachko Decl. ¶ 3, ECF No. 50-1. About 30 minutes later, Officer Fachko heard another Santa Clara police officer, Officer Anthony Pianto, alert police communications that Officer Pianto was tailing a Honda Civic with a license plate matching that of the stolen vehicle. *Id.* ¶ 5. Officer Fachko did not know, however, whether the occupants of the Honda (1) had a criminal history; (2) were under the influence of drugs or alcohol; (3) had weapons in the Honda; or (4) had committed a crime involving the threat of violence or injury. Fachko Dep. at 48:13–49:14. Officer Fachko drove to assist Officer Pianto. Fachko Decl. ¶ 5.

Upon meeting, the officers discussed a plan to block the Honda at the intersection of El Camino Real and Scott Boulevard. *Id.* ¶ 6. Specifically, Officer Fachko decided to block the Honda by pulling in front of the Honda so that the Honda could not drive off. *Id.* Officer Pianto would box in the Honda from the rear. *Id.* Officer Fachko expected that the intersection would be a good place to block the Honda because the Honda would stop at the intersection's red light. *Id.*

As expected, the approaching Honda—driven by Gomez—stopped at the red light at Scott Boulevard. *Id.* As seen on video taken by the intersection's traffic camera, the following transpired in about seven seconds.[2] Video, ECF No. 50-3 (zoomed version). Officer Fachko drove in front of the Honda and activated his marked patrol SUV's light bar. Meanwhile, Officer Pianto pulled in

_____

[2] A traffic camera video captured the stop and shooting, albeit without audio. ECF No. 50-3 (filed by thumb drive).

2

United States District Court
Northern District of California

behind the Honda and activated his light bar as well. Video at 0:03–04. Officer Fachko then exited his SUV. Given where Officer Fachko parked his SUV, Officer Fachko exited roughly a few feet to the side of the Honda, away from the Honda's front. Video at 0:06; *see* Fries Decl. ¶ 8, Ex. 2 (reconstruction of shooting). Officer Fachko then began moving toward Officer Pianto's vehicle past the driver's side door of the Honda. Fachko Dep. at 92:20–24.

At this point—about four seconds into the stop—Gomez reversed the Honda 16 inches at no more than 1.2 miles per hour. Video at 0:07; *see* Jason Fries Decl. ¶ 10, ECF No. 53 (Gomez's proffered forensics expert). As the Honda reversed, it moved backward in a straight line, and its wheels were generally straight. *See* Fries Decl. ¶¶ 10–11 (analyzing police photograph and 3D reconstructions); Gomez Dep. at 80:8–10 (testifying he did not turn steering wheel). The Honda then struck Officer Pianto's SUV. As a result of the collision, the Honda rebounded four inches forward and stopped moving in 0.5 seconds. Fries Decl. ¶¶ 12, 14. Aside from that rebound, the Honda did not move forward before or after Officer Fachko's impending shots. *Id.*; Pianto Dep. at 54:5–8; Fachko Dep. at 38:2–12. Officer Fachko never saw Gomez turn the steering wheel left toward Officer Fachko. Fachko Dep. at 56:19–57:2, 68:15–17. Nor did Officer Fachko see the front tires of the Honda turn left. *Id.*

Rather, the Honda came to a stop, and Gomez took his foot off the gas pedal and put his hands up. *See, e.g.*, Gomez Dep. at 76:12–23 ("my hands went up . . . I pretty much took all my legs off the gas, brake[,] and the clutch"), 84:4–16 (same), 85:1–4 ("[M]y hands were already up."), 91:18–20 (testifying that he did not "apply[] the gas at all" after collision). About one second later, Officer Fachko fired three shots at Gomez from the driver's side of the Honda. Fachko Dep. at 14:14–17. Two of the shots went through the Honda's driver-side window into Gomez's chest, and one went into the Honda's driver-side A-pillar. Fachko Decl. ¶ 9, ECF No. 50-2; Robert Fonzi Dep. at 32:9, ECF No. 52-6 (Defendants' police practices expert testifying as to "two shots into the chest"). When Officer Fachko fired all three shots, the Honda was stopped. Moreover, Gomez's hands were up at least with the first shot. *See* Gomez Dep. at 38:9–22 ("[W]hen my hands went on my head, I caught the first bullet in my arm . . ."), 75:10–12; *see also*

3

United States District Court
Northern District of California

1    Fachko Dep. at 58:18–19 ("I remember the driver's hands were either -- I think they were kind of

2    like toward his chest . . . ."). Gomez's forensic expert, Jason Fries, proffers a three-dimensional

3    reconstruction of the shooting based on an analysis of the traffic camera video and a police

4    photograph demonstrating the trajectory of Officer Fachko's shots. That police photograph and

5    Fries' reconstruction are below:

6        • *Police photo demonstrating the trajectory of Officer Fachko's shots* (Fries Decl. ¶ 8, Ex. 2)



20    //

21    //

22    //

23    //

24    //

25    //

26    //

27

28
                                                    4
Case No. 19-CV-05266-LHK
ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

- *Fries' reconstruction of the shooting* (Fries Decl. ¶ 7, Ex. 1)



Officer Fachko concedes that he would "not think it was appropriate to shoot the driver of a stopped vehicle." Fachko Dep. at 30:1–2. "[A] stopped vehicle would not pose a threat to . . . any officer or the public." *Id.* at 30:7–9. Even so, Officer Fachko asserts that he shot Gomez because "I felt and believed that Gomez was trying to run me over or drive through the area where I was standing in order to evade the block." Fachko Decl. ¶ 9. Officer Fachko also asserts that "I concluded that I did not have an opportunity to evade Gomez' vehicle." *Id.*

Police photographs taken after the shooting show that Gomez's Honda Civic had its front tires turned slightly to the right—that is, away from where Officer Fachko had been standing. Fries Decl. ¶ 12 & Ex. 5. Moreover, even if Gomez's Honda had its front tires turned fully to the left, "the Honda would not have been able to turn enough to get past Officer Fachko's police vehicle or hit Officer Fachko." *Id.* ¶ 21. Gomez supports this conclusion with a driving test conducted by Fries, and the fact that a Honda Civic's minimum turning radius is 37 feet. *Id.* & Ex. 6.

Case No. 19-CV-05266-LHK
ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**B. Procedural History**

After the shooting, Gomez was charged with (1) resisting an officer with force in violation of California Penal Code § 69; and (2) vehicle theft in violation of California Penal Code § 666.5. Plea Tr. at 5:12–6:7, *People v. Gomez*, Nos. C1776322 & C1885082 (Cal. Sup. Ct. Jan. 24, 2019), ECF No. 50-8.[3] On January 24, 2019, Gomez pled no contest both to resisting an officer and to stealing the Honda. *Id.*

As relevant here, Gomez expressly limited the factual basis for his no contest plea to resisting an officer. Gomez and the government "stipulate[d] that there is a factual basis based on the videotape of this incident that we all reviewed *where he's backing his car up into the patrol vehicle.*" *Id.* at 8:8–11 (emphasis added). Aside from that factual basis, Gomez's defense counsel stated that because "the shooting occurred *after* Mr. Gomez's car backed up into the patrol vehicle, [] Mr. Gomez is not agreeing that the officer [*i.e.*, Officer Fachko] was in the lawful performance of his duty at the time [Gomez] was shot." *Id.* at 4:20–24 (emphasis added). "Gomez wanted to state this on the record because he want[ed] to make sure there's no confusion regarding that charge [of resisting an officer]." *Id.* at 4:27–5:1. The Superior Court for Santa Clara County then confirmed that defense counsel's statement was "the understanding of all parties." *Id.* at 5:4–6.

On August 22, 2019, Gomez brought the instant case against the City of Santa Clara and Officer Fachko ("Defendants"). ECF No. 1. Gomez alleged eight claims for damages under 42 U.S.C. § 1983 and state law: (1) excessive force in violation of the Fourth Amendment; (2) denial of medical care in violation of the Fourth Amendment; (3) municipal liability for a

---

[3] Defendants request judicial notice of the transcript of Gomez's plea in the Superior Court for the County of Santa Clara. ECF No. 50-7 ("RJN"). Gomez does not oppose Defendants' request. The Court may take judicial notice of matters that are either "generally known within the trial court's territorial jurisdiction" or "can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Public records are proper subjects of judicial notice. *See, e.g.*, *Calhoun v. Google LLC*, No. 20-CV-05146-LHK, 2021 WL 1056532, at *5 (N.D. Cal. Mar. 17, 2021) (collecting cases). Accordingly, the Court GRANTS Defendants' unopposed request for judicial notice.

Case No. 19-CV-05266-LHK
ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1   unconstitutional custom, practice, or policy; (4) municipal liability for ratifying Officer Fachko's

2   unreasonable use of deadly force; (5) municipal liability for failure to train; (6) battery;

3   (7) negligence; and (8) violating the Bane Civil Rights Act, Cal. Civ. Code § 52.1. *Id.* at 5–18.

4        On February 5, 2021, Defendants filed the instant motion for summary judgment on all

5   claims. ECF No. 50-1 ("Mot."). Gomez filed his opposition on February 19, 2021. ECF No. 51

6   ("Opp'n"). Gomez's opposition "dismisses his claims for denial of medical care and *Monell* [*i.e.*,

7   municipal] liability" instead of opposing Defendants' motion for summary judgment on those

8   claims. Opp'n at 1 n.1.

9        Thus, the Court DISMISSES with prejudice Gomez's claims for (1) denial of medical care

10  under 42 U.S.C. § 1983 against Officer Fachko (Count 2); (2) municipal liability for an

11  unconstitutional custom, practice, or policy under 42 U.S.C. § 1983 against the City of Santa Clara

12  (Count 3); (3) municipal liability for ratification of a constitutional violation under 42 U.S.C.

13  § 1983 against the City of Santa Clara (Count 4); and (4) municipal liability for failure to train

14  under 42 U.S.C. § 1983 against the City of Santa Clara (Count 5). ECF No. 1.

15       On February 26, 2021, Defendants filed their reply in support of the instant motion. ECF

16  No. 55 ("Reply").

## II.     LEGAL STANDARD

18       Summary judgment is proper where the pleadings, discovery, and affidavits show that

19  there is "no genuine dispute as to any material fact and [that] the movant is entitled to judgment as

20  a matter of law." Fed. R. Civ. P. 56(a). Material facts are those which may affect the outcome of

21  the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact

22  is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving

23  party. *See id.*

24       The Court will grant summary judgment "against a party who fails to make a showing

25  sufficient to establish the existence of an element essential to that party's case, and on which that

26  party will bear the burden of proof at trial[,] . . . since a complete failure of proof concerning an

27  essential element of the nonmoving party's case necessarily renders all other facts immaterial."

28

United States District Court
Northern District of California

7

United States District Court
Northern District of California

1    *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party bears the initial burden

2    of identifying those portions of the record that demonstrate the absence of a genuine issue of

3    material fact. *Id*. The burden then shifts to the nonmoving party to "go beyond the pleadings, and

4    by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file,

5    designate specific facts showing that there is a genuine issue for trial." *Id*. at 324 (internal

6    quotations omitted). If the nonmoving party fails to make this showing, "the moving party is

7    entitled to judgment as a matter of law." *Id*. at 323.

8          For purposes of summary judgment, the Court must view the evidence in the light most

9    favorable to the nonmoving party; if the evidence produced by the moving party conflicts with

10   evidence produced by the nonmoving party, the Court must assume the truth of the evidence

11   submitted by the nonmoving party. *Leslie v. Grupo ICA*, 198 F.3d 1152, 1158 (9th Cir. 1999). The

12   Court's function on a summary judgment motion is not to make credibility determinations or

13   weigh conflicting evidence with respect to a disputed material fact. *T.W. Elec. Serv. v. Pac. Elec.*

14   *Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

15   **III.    DISCUSSION**

16         Defendants move for summary judgment on three independent grounds. First, Defendants

17   argue that Gomez's no contest plea to resisting an officer bars all of Gomez's claims under *Heck v.*

18   *Humphrey*, 512 U.S. 477 (1994). Second, Defendants argue that qualified immunity bars Gomez's

19   Fourth Amendment claims of excessive force. Third, Defendants argue that Gomez's state law

20   claims—battery, negligence, and violation of the Bane Civil Rights Act—lack a factual basis

21   given the reasonableness of Officer Fachko's use of force.

22         The Court analyzes each ground for summary judgment below. Ultimately, the Court

23   concludes that Gomez's claims would not "necessarily imply the invalidity of his conviction" for

24   resisting an officer. *Id.* at 487. Nor does qualified immunity allow Officer Fachko to avoid liability

25   for firing at Gomez three times while (1) Gomez's vehicle was stopped and boxed in by two police

26   SUVs; (2) Gomez's hands were up; and (3) nobody was in the path of Gomez's vehicle. Finally,

27   Gomez's state law claims survive summary judgment because, as the Court's qualified immunity

28

8

1    analysis shows, there is a material factual dispute as to whether Officer Fachko's conduct meets

2    the elements of the state law claims. Thus, the Court DENIES Defendants' motion for summary

3    judgment.

4        **A.** ***Heck v. Humphrey* does not bar Gomez's claims.**

5            Defendants argue that Gomez's conviction for resisting an officer, in violation of

6    California Penal Code § 69, requires dismissal of Gomez's lawsuit under *Heck v. Humphrey* and

7    *Heck*'s California equivalent, *Truong v. Orange County Sheriff's Department*, 129 Cal. App. 4th

8    1423, 1429–30 (Cal. Ct. App. 2005). *Heck* held that, for a 42 U.S.C. § 1983 plaintiff to recover

9    damages for conduct whose unlawfulness would render a conviction invalid, that plaintiff must

10   prove that the conviction has been reversed, otherwise set aside, or called into question. *Heck*, 512

11   U.S. at 486–87. Here, there is no dispute that Gomez's conviction under California Penal Code

12   § 69 is valid. Thus, Defendants' argument is that Gomez's claims "necessarily imply the invalidity

13   of his [§ 69] conviction." *Id.* at 487.

14           To prevail on this *Heck* argument, Defendants bear the burden of making "clear" that

15   success on Gomez's claims "would *necessarily* imply or demonstrate that [Gomez]'s earlier

16   conviction was invalid." *Smith v. City of Hemet*, 394 F.3d 689, 699 & n.5 (9th Cir. 2005) (en banc)

17   (emphasis in original) (citing *Sanford v. Motts*, 258 F.3d 1117, 1119 (9th Cir. 2001)). Defendants'

18   argument starts from the premise that "[i]mplicit in a Penal Code [§] 69 conviction is a finding

19   that the officer or officers who were being resisted, were acting lawfully (*i.e.*, not engaging in

20   excessive force)." Mot. at 12. Under this premise, Defendants argue that "[Gomez]'s plea under

21   Penal Code [§] 69 effectively concedes that Officer Fachko did not engage in excessive force

22   during the encounter." *Id.* Defendants thus argue that the reasonableness of Officer Fachko's use

23   of deadly force defeats Gomez's federal and state claims. *Id.* at 12, 19–20.

24           Below, the Court first shows why Defendants' argument is incorrect. The Court then

25   explains how Defendants' attempts to distinguish controlling case law are unpersuasive.

26

27

28

Case No. 19-CV-05266-LHK
ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1          **1.  *Heck* does not bar Gomez's claims because Gomez's plea expressly preserved an excessive force claim against Officer Fachko.**

2          Defendants' argument is incorrect for a simple reason: "Under *Heck*, [Gomez] [is] allowed

3   to bring a § 1983 action [because] the use of excessive force occurred *subsequent* to the conduct

4   on which his conviction was based." *Smith*, 394 F.3d at 698 (emphasis in original). The basis for

5   Gomez's plea was Gomez resisting Officer *Pianto*, not Officer Fachko. Officer Fachko's alleged

6   use of excessive force "occurred *subsequent* to" Gomez resisting Officer Pianto. *Id.* Specifically,

7   at the plea hearing, the parties "stipulate[d]" that the "factual basis" for Gomez's plea was

8   "[Gomez] backing his car up into the patrol vehicle." Plea Tr. at 8:8–11. That patrol vehicle was

9   Officer Pianto's.

10         Then, as detailed in the Factual Background section above, three events separated the basis

11  for Gomez's plea from Officer Fachko's use of deadly force. *See* Section I-A, *supra* (detailing

12  background and images of shooting). First, Gomez's Honda Civic rebounded four inches off

13  Officer Pianto's vehicle, which had boxed in the Honda from behind. Fries Decl. ¶¶ 12, 14.

14  Second, 0.5 seconds after rebounding, the Honda stopped moving. *Id.*; Pianto Dep. at 54:5–8;

15  Fachko Dep. at 38:2–12. At no point did Gomez turn the Honda left toward Officer Fachko.

16  Fachko Dep. at 56:19–57:2, 68:15–17. In fact, the Honda wheels were turned away from Officer

17  Fachko in police photographs. Fries Decl. ¶ 12 & Ex. 5. Third, Gomez put his hands up and

18  removed his foot from the gas pedal. Gomez Dep. at 38:9–22, 63:19–64:23, 75:10–12; *see also*

19  Fachko Dep. at 58:18–19 ("I remember the driver's hands were either -- I think they were kind of

20  like toward his chest . . . ."). Only then, about one second after the Honda stopped moving and

21  Gomez's hands were up, did Officer Fachko fire three shots at Gomez from the driver's side of the

22  Honda. Fachko Dep. at 14:14–17; Video at 0:05–0:08.

23         Pursuant to this chain of events, Gomez's plea of no contest expressly preserved the

24  argument that Officer Fachko used excessive force. At Gomez's plea hearing, Gomez's counsel

25  stated that because "the shooting occurred *after* Mr. Gomez's car backed up into the patrol

26  vehicle, [] Mr. Gomez is not agreeing that the officer [*i.e.*, Officer Fachko] was in the lawful

27  performance of his duty at the time [Gomez] was shot." *Id.* at 4:20–24 (emphasis added). "Gomez

28  

       United States District Court
       Northern District of California

1    wanted to state this on the record because he want[ed] to make sure there's no confusion regarding

2    that charge [*i.e.*, resisting an officer]." *Id.* at 4:27–5:1. The Superior Court for Santa Clara County

3    then confirmed that defense counsel's statement was "the understanding of all parties." *Id.* at 5:4–

4    6.

5            Thus, if Gomez prevailed on his claims that Officer Fachko used excessive force, that

6    would not "*necessarily* imply or demonstrate that [Gomez]'s earlier conviction was invalid."

7    *Smith*, 394 F.3d at 699 (emphasis in original). Rather, the only basis for Gomez's § 69 conviction

8    is that Gomez resisted Officer *Pianto* by backing the Honda into Officer Pianto's patrol vehicle.

9    Plea Tr. at 8:8–11. Even if Officer Fachko's subsequent shooting of Gomez was unlawful, that

10   would not necessarily imply that Officer Pianto had also acted unlawfully.

11           Three cases illustrate the en banc Ninth Circuit's holding that, under *Heck*, a plaintiff is

12   "allowed to bring a § 1983 action [] if the use of excessive force occurred *subsequent to* the

13   conduct on which his conviction was based." *Smith*, 394 F.3d at 698 (emphasis in original). The

14   first case is *Sanford v. Motts*, 258 F.3d 1117 (9th Cir. 2001). In *Sanford*, plaintiff's case was even

15   weaker than Gomez's. Unlike Gomez, plaintiff Regina Sanford brought an excessive force claim

16   against the *same* officer she pled nolo contendere ("no contest") to resisting. *Id.* at 1118. The

17   officer argued, as Defendants do here, that a finding of excessive force would imply the invalidity

18   of plaintiff's conviction for resisting arrest. *Id.* at 1119. The Ninth Circuit disagreed. The Ninth

19   Circuit held that "if [the officer] used excessive force *subsequent to* the time Sanford interfered

20   with [the officer's] duty, success in [Sanford's] section 1983 claim will not invalidate her

21   conviction." *Id.* at 1120 (emphasis added). Applying this holding, the Ninth Circuit reasoned that

22   "[n]othing in the record informs us what the factual basis was for Sanford's plea of nolo." *Id.* at

23   1119. Thus, the *Sanford* defendants failed to show that the officer had used allegedly excessive

24   force before or during Sanford's resistance, rather than afterwards. *Id.*

25           Gomez's argument against the *Heck* doctrine is even stronger than Sanford's. The basis for

26   Sanford's plea of no contest was merely unclear. *Id.* By contrast, the basis for Gomez's plea of no

27   contest expressly preserves an excessive force claim against Officer Fachko. Plea Tr. at 4:20–5:1

28

Case No. 19-CV-05266-LHK
ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    (emphasis added). Moreover, viewing the facts in the light most favorable to Gomez, Officer

2    Fachko used excessive force "*subsequent to*" Gomez's interference with Officer Pianto's duty. *Id.*

3    at 1120 (emphasis in original).

4        The second case that confirms that Gomez may bring this lawsuit despite *Heck* is *Hooper*

5    *v. County of San Diego*, 629 F.3d 1127 (9th Cir. 2011). There, the Ninth Circuit held that plaintiff

6    Deborah Hooper's excessive force claim was not *Heck*-barred even though (1) she had pleaded

7    guilty to resisting arrest; and (2) her arrest—and the allegedly excessive force—occurred "in a

8    single continuous chain of events lasting a very brief time." *Id.* at 1129, 1131. The Ninth Circuit

9    reasoned that "a plaintiff alleging excessive force 'does not collaterally attack his conviction or

10   deny that he resisted. Rather, plaintiff claims that he suffered unnecessary injuries *because the*

11   *response to his resistance* was not objectively reasonable." *Id.* at 1133 (emphasis added)

12   (alterations in original omitted) (quoting *VanGilder v. Baker*, 435 F.3d 689, 692 (7th Cir. 2006)).

13   Thus, Hooper could challenge the lawfulness of force used *after* "the initial arrest attempt." *Id.*

14   (quoting *Yount v. City of Sacramento*, 43 Cal. 4th 885, 899 (Cal. 2008)). In *Hooper*, that allegedly

15   unlawful force was the use of a police dog after Hooper stopped resisting arrest. *Id.* at 1129.

16       Analogously here, Officer Fachko used deadly force after Gomez stopped resisting arrest.

17   Moreover, as in *Hooper*, it is immaterial that Gomez's arrest was "a single continuous chain of

18   events lasting a very brief time." *Id.* at 1131. *Hooper* instructs that Gomez's claims may proceed

19   because Gomez's claims do not "negate the lawfulness of the initial arrest attempt, or negate the

20   unlawfulness of [Gomez's] attempt to resist it." *Id.* at 1133 (quoting *Yount*, 43 Cal. 4th at 899).

21   Rather, it is entirely consistent for two things to be true simultaneously: (1) Gomez resisted arrest

22   by backing into Officer Pianto's car (*i.e.*, the express basis for Gomez's plea); and (2) Officer

23   Fachko's used excessive force when he shot at Gomez three times while Gomez's hands were up,

24   Gomez's car was stopped and boxed in between two police SUVs, and the front wheels of

25   Gomez's car were turned away from Officer Fachko.

26       The third case that illustrates why Gomez's case is not *Heck*-barred is *Harris v. Simental*,

27   No. 11-CV-5306-LHK, 2013 WL 3733429 (N.D. Cal. July 15, 2013). There, as here, plaintiff pled

28

12

United States District Court
Northern District of California

no contest to violating California Penal Code § 69 and then sued two arresting police officers for excessive force. *Id.* at *2. The officers argued that, under *Heck*, plaintiff Emmett Harris's § 69 conviction barred Harris's excessive force lawsuit. This Court disagreed. This Court reasoned that "[Harris]'s federal claim stems from the events that occurred *after* [Harris]'s unlawful behavior—*i.e.*, resisting [one of the two officers]." *Id.* at *4 (emphasis in original). Specifically, Harris's claim challenged the other officer repeatedly tasing Harris even after Harris stopped resisting. *Id.* at *2. That tasing officer had come to assist the officer whom Harris had forcefully resisted. *Id.* Given that Harris's § 69 conviction was based on Harris's earlier resistance against the non-tasing officer, Harris's excessive force claim against the *tasing* officer did not necessarily imply the invalidity of his conviction. *Id.* at *4.

The same rule holds true here. Gomez's § 69 conviction is based on Gomez's resistance against Officer Pianto, not any resistance against Officer Fachko. Indeed, Gomez's plea expressly preserved an excessive force claim against Officer Fachko. Thus, the instant case does not "necessarily imply the invalidity" of Gomez's § 69 conviction. *Smith*, 394 F.3d at 699 (explaining standard for *Heck* bar).

### 2. Defendants' attempts to distinguish controlling case law are unpersuasive.

Defendants offer two responses to this weight of authority. Neither is persuasive. First, Defendants argue that the plaintiffs in *Sanford* and *Hooper* did not resist arrest as violently as Gomez did. Reply at 3–4. Specifically, Defendants note that those plaintiffs were convicted of resisting an officer under California Penal Code § 148, rather than § 69. *Id.* Defendants conclude this argument by stating that "Penal Code § 69 is a more serious crime which requires the prosecutor to prove that the defendant willfully used violence or threat of violence to resist the officer." Reply at 3; *accord* Judicial Council of California Criminal Jury Instructions, CALCRIM No. 2651 (March 2021 revision) (stating elements of § 69).

Defendants' first argument is besides the point. It is true that Gomez willfully used violence to resist Officer Pianto. Specifically, as the basis for his § 69 conviction, Gomez stipulated to reversing his Honda into Officer Pianto's SUV and striking it. Plea Tr. at 8:8–11. Yet

13

1   nothing about Gomez's § 69 conviction required the government to prove that Officer Fachko's

2   subsequent shooting of Gomez was lawful. To the contrary, Gomez stated at his plea hearing—

3   and the Superior Court confirmed—that his § 69 conviction did not concede the lawfulness of

4   Officer Fachko's use of force. *Id.* at 4:27–5:6.

5        Defendants' other argument is that *Hooper* is distinguishable under another Ninth Circuit

6   case, *Beets v. County of Los Angeles*, 669 F.3d 1038, 1044 (9th Cir. 2012). Reply at 4.

7   Specifically, Defendants argue that, under *Beets*, *Heck* bars an excessive force lawsuit where

8   "there was no break between the criminal defendant's assault with the [vehicle] and the police

9   response." Reply at 4. Applying *Beets*'s supposed rule, Defendants conclude that *Heck* bars

10   Gomez's lawsuit because "there was no meaningful break between the provocative act that Gomez

11   admitted to in his criminal proceeding (reversing the Honda back into Pianto's vehicle) and the

12   Honda's sudden forward movement which put Officer Fachko in reasonable fear of life." *Id.*

13        Defendants overread *Beets*. *Beets* did not disturb *Hooper*'s holding, which is that *Heck* is

14   no bar "when the conviction [for resisting arrest] and the § 1983 claim are based on different

15   actions during 'one continuous transaction.'" *Hooper*, 629 F.3d at 1134. To the contrary, *Beets*

16   confirmed that "an allegation of excessive force by a police officer would not be barred by *Heck* if

17   it were distinct *temporally or spatially from the factual basis* for the person's conviction." *Beets*,

18   669 F.3d at 1042 (emphasis added).

19        Applying this settled rule, the *Beets* Court explicitly reached a "conclusion [] based on, and

20   limited to, the particular facts in th[e] case." *Id.* at 1048. Specifically, the *Beets* Court concluded

21   that *Heck* barred plaintiffs' excessive force claim on two grounds. First, based on written

22   representations on direct appeal of the underlying criminal conviction, the only factual basis for

23   the conviction was the "same factual basis as the alleged civil rights violations." *Id.* at 1045.

24   Second, the conviction was rendered by a *jury* rather than entered by a plea. *Id.* (distinguishing

25   *Sanford*, 258 F.3d at 1118–19). Unlike a plea, a jury verdict "does not determine which specific

26   act or acts form the basis for the conviction. Thus, a jury's verdict necessarily determines the

27   lawfulness of the officers' actions throughout the whole course of the defendant's conduct." *Id.*

28

Case No. 19-CV-05266-LHK
ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    (emphasis omitted) (quoting *Smith*, 394 F.3d at 699 n.5).

2         Neither ground for *Beets*'s explicitly "limited" conclusion applies here. *Id.* at 1048. The

3    only factual basis for Gomez's conviction—"[Gomez] backing his car up into [Officer Pianto's]

4    patrol vehicle"—was expressly *distinct* from Officer Fachko's subsequent use of deadly force.

5    Plea Tr. at 8:8–11. Moreover, like in *Sanford* and unlike in *Beets*, Gomez's conviction was the

6    result of a no contest plea, not a jury conviction. Gomez's plea "determine[d] which specific act or

7    acts form[ed] the basis for the conviction." *Id.* (quoting *Smith*, 394 F.3d at 699 n.5).

8         In sum, *Heck* does not bar Gomez's federal claims against Defendants. Nor does Heck's

9    California equivalent, *Truong*, bar Gomez's state law claims. 129 Cal. App. 4th at 1429–30. As

10   Defendants' concede, "[t]he California Supreme Court does not distinguish between the

11   application of *Heck* to a section 1983 claim and the state law analogues based on the same

12   conduct." Reply at 9. Thus, because Gomez's federal claims are not *Heck*-barred, Gomez's state

13   law claims are not *Truong*-barred.

14   **B.  Officer Fachko is not entitled to qualified immunity.**

15        Defendants' other argument for summary judgment is that Officer Fachko is entitled to

16   qualified immunity. "The doctrine of qualified immunity protects government officials 'from

17   liability for civil damages insofar as their conduct does not violate clearly established statutory or

18   constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555

19   U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To overcome

20   qualified immunity, Gomez must make two showings. First, Gomez must show that "the facts

21   alleged, taken in the light most favorable to [Gomez] asserting the injury, show that the official's

22   conduct violated a constitutional right." *Clairmont*, 632 F.3d at 1100. Second, Gomez must show

23   that the right at issue "was clearly established 'in light of the specific context of the case' at the

24   time of the alleged misconduct." *Id.* (quoting *Saucier*, 533 U.S. at 201). Particularly in excessive

25   force cases, the United States Supreme Court "ha[s] stressed the need to identify a case where an

26   officer acting under similar circumstances was held to have violated the Fourth Amendment.

27   While there does not have to be a case directly on point, existing precedent must place the

28

Case No. 19-CV-05266-LHK
ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    lawfulness of the particular action beyond debate." *City of Escondido v. Emmons*, 139 S. Ct. 500,

2    504 (2019) (per curiam) (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curiam)).

3            Below, the Court first explains why Officer Fachko is not entitled to qualified immunity.

4    The Court then explains why Defendants' arguments for qualified immunity are unpersuasive.

### 1. Viewing the facts in the light most favorable to Gomez, Officer Fachko violated Gomez's clearly established right to be free from excessive force.

6            Here, existing precedent involving "officer[s] acting under similar circumstances" places

7    the unlawfulness of Officer Fachko's actions "beyond debate." *Id.* Two published Ninth Circuit

8    opinions require this conclusion. Both opinions analyzed police shootings predating the October

9    21, 2017 shooting here. *See Orn v. City of Tacoma*, 949 F.3d 1167, 1176 (9th Cir. 2020) (October

10   12, 2011 shooting); *Villanueva v. California*, 986 F.3d 1158, 1162 (9th Cir. 2021) (July 3, 2016

11   shooting). Both opinions held that, at the time of the shootings, qualified immunity did not shield

12   police officers who shoot at a slow-moving (or stopped) car when (1) no one is "in the vehicle's

13   path of travel"; (2) the vehicle was not accelerating toward an officer; and (3) the officers had no

14   reason to believe that the car's driver committed a "violent crime," had engaged in a "high-speed

15   chase," or would otherwise pose a threat of "serious physical harm to others." *Orn*, 949 F.3d at

16   1175–76; *accord Villanueva v. California*, 986 F.3d 1158, 1170 (9th Cir. 2021) (collecting cases).

17           Below, the Court compares the circumstances in each Ninth Circuit case and Officer

18   Fachko's circumstances here. In detailing what Officer Fachko faced, the Court must credit

19   Gomez's version of events—even if it conflicts with Defendants' version of events—unless

20   Gomez's account is "blatantly contradicted by the record, so that no reasonable jury could believe

21   it." *Orn*, 949 F.3d at 1171 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)).

22           In *Orn v. City of Tacoma*, police officers tailed Than Orn in a 15-minute slow-speed pursuit

23   that ended in the police shooting Orn. *Orn*, 949 F.3d at 1172. The pursuit started when Orn

24   ignored "a police car with its lights activated attempting to pull him over." *Id.* at 1171. Rather than

25   pull over, Orn decided to drive home. *Id.* "As he made his way home, Orn traveled at 25–35 miles

26   per hour and stopped at traffic lights and stop signs." *Id.* at 1172. Along the way, more police

27

28

Case No. 19-CV-05266-LHK
ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

officers joined the pursuit. *Id.* They tried to block Orn in several ways—including "box[ing] him in," "dr[iving] in front of Orn's vehicle to block his path," and laying spike strips. *Id*. Orn evaded these efforts with unlawful driving: driving "onto a curb and down a portion of a close roadway," and "swerving . . . into the oncoming lane of traffic." *Id.* Eventually, the officers boxed in Orn's car between two police vehicles and a nearby parked car. *Id.* at 1173. In response, Orn tried to "navigate through a narrow opening" between the vehicles. *Id.* To do this, Orn made a sharp turn at about five miles per hour toward the two police cars and a nearby officer standing to the side of Orn's car. *Id.* Orn ignored the officer's "repeated[] yell[s] at Orn to stop," even though the officer had his gun drawn. *Id.* Orn's car struck both police vehicles. *Id.* The nearby officer then shot Orn through Orn's passenger-side windows. *Id.*

Orn sued the shooting officer for excessive force. *Id.* at 1171. The district court denied the officer's motion for summary judgment based on qualified immunity, and the Ninth Circuit affirmed. *Id.* The Ninth Circuit reached its conclusion on two grounds. First, "according to Orn's version of events, [the officer] was never at risk of being struck by Orn's vehicle because he was never in the vehicle's path of travel." *Id.* at 1174–75. Second, the officer lacked "an objectively reasonable basis for believing that Orn posed a threat of serious physical harm to others." *Id.* at 1176. In the Ninth Circuit's view, Orn's driving immediately before the shooting had been "slow" and "non-reckless," and his collision with the two police cars was "slight." *Id.* at 1176. Moreover, Orn's 15-minute pursuit at 25 to 35 miles per hour did not justify deadly force either. *Id.*

In weighing whether an officer is entitled to qualified immunity at summary judgment, the Court "must construe the facts in the light most favorable to the plaintiff." *Orn*, 949 F.3d at 1171. Specifically, as the Ninth Circuit has explained, the Court must credit plaintiff's version of events unless it is "blatantly contradicted by the record, so that no reasonable jury could believe it." *Id.* (quoting *Scott*, 550 U.S. at 380). Here, on Gomez's account of the facts—which are not "blatantly contradicted by the record"—Officer Fachko's case for qualified immunity is even weaker than the unsuccessful case for qualified immunity in *Orn*. *Id.* Officer Fachko had less reason to believe that Gomez posed a threat to officers or others. Three facts show why. First, Gomez had not led

17

United States District Court
Northern District of California

United States District Court
Northern District of California

1 | officers on a pursuit—let alone one in which he evaded police vehicles boxing him in and drove
2 | into oncoming traffic. Rather, officers only tried to stop Gomez once: when he was parked at a red
3 | light. *See* Section I-A, *supra* (factual background); Video at 0:03. Second, Gomez struck only one
4 | police vehicle (compared to Orn striking two) and did so at a slower speed of 1.2 miles per hour.
5 | Jason Fries Decl. ¶ 10. Third, at the time of the shooting, Gomez's hands were up, his foot was off
6 | the gas pedal, his car was stopped, and its wheels were turned slightly away from Officer Fachko.
7 | Fries Decl. ¶¶ 12, 14; Pianto Dep. at 54:5–8; Fachko Dep. at 38:2–12, 56:19–57:2, 68:15–17. By
8 | contrast, Orn was driving forward with his car wheels turned directionally *toward* the firing
9 | officer. *Orn*, 949 F.3d at 1172–73. Thus, just as the officer in *Orn* was not entitled to qualified
10 | immunity, Officer Fachko is not either.

11 | A second Ninth Circuit case denying qualified immunity confirms this conclusion. In
12 | *Villanueva v. California*, police officers pursued Armando Villanueva in a high-speed chase that
13 | ran at least three red lights. 986 F.3d at 1163. The officers eventually cornered Villaneuva in a
14 | dead end. *Id.* On seeing Villanueva's stopped car, the officers "immediately exited their vehicle
15 | and drew their firearms." *Id.* Yet "at the same time," Villanueva tried to reverse out of the dead end
16 | in a way that had the front of his vehicle "facing the [o]fficers, who were approximately 15 to 20
17 | feet away. The [o]fficers then opened fire on the vehicle." *Id.*

18 | As in *Orn*, the district court denied qualified immunity and the Ninth Circuit affirmed. The
19 | Ninth Circuit rejected the officers' arguments that Villaneuva had just led the officers on a high-
20 | speed chase, and that at the time of the shooting, Villanueva's car "faced their direction and hit the
21 | gas." *Id.* at 1170. The Ninth Circuit held that the high-speed chase was immaterial because, at the
22 | time of the shooting, Villaneuva's car was "slow-moving." *Id.* The Ninth Circuit also held
23 | immaterial that Villaneuva's car was facing the officers. *Id.* "The key question," the Ninth Circuit
24 | reasoned, was "whether Villanueva accelerated or attempted to accelerate toward the [o]fficers."
25 | *Id.* On the *Villaneuva* plaintiffs' version of the facts, Villanueva had "never accelerated toward the
26 | police vehicle or the [o]fficers." *Id.* Thus, the plaintiffs' excessive force claim could survive
27 | summary judgment.

28 |

Case No. 19-CV-05266-LHK
ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    Like *Orn*, *Villaneuva* presented a stronger case for qualified immunity than the instant

2    case. As detailed above, Officer Fachko had not followed Gomez on any pursuit, let alone a high-

3    speed one that ran several red lights. At the time of the shooting, Gomez had his hands up, and his

4    car (1) was stopped at a red light; (2) was not accelerating because Gomez's foot was off the gas;

5    and (3) had its wheels pointed slightly away from Officer Fachko. *See* Section I-A, *supra* (factual

6    background). Moreover, Officer Fachko stood to the side of Gomez's car, not in front of it. On

7    these facts, Officer Fachko violated Gomez's clearly established constitutional right to be free

8    from excessive force by shooting at him three times.

9         **2.   Defendants' arguments in support of qualified immunity are unpersuasive.**

10   Defendants respond with three unpersuasive arguments to support qualified immunity.

11   First, Defendants try to distinguish *Orn* and *Villaneuva* on two grounds: (1) Gomez was allegedly

12   more dangerous because he was a suspect who had stolen a vehicle; and (2) Officer Fachko was

13   allegedly in the path of Gomez's vehicle at the time of the shooting. Mot. at 6–7. Neither ground

14   distinguishes those cases. Though Gomez had stolen the car he was driving, even Officer Fachko

15   admits that deadly force requires more justification than car theft. *See* Fachko Dep. at 40:5–15

16   (conceding it would be inappropriate to shoot Gomez while Gomez was stopped or backing up).

17   Moreover, unlike the criminal defendants in *Orn* and *Villaneuva*, Gomez had not engaged officers

18   in a pursuit. Rather, until he backed into Officer Pianto's vehicle at 1.2 miles per hour, there was

19   no indication that Gomez would resist arrest.

20   Nor can Officer Fachko's assertion that he was in the path of Gomez's vehicle support

21   qualified immunity. At summary judgment on a qualified immunity defense, the Court must credit

22   plaintiff's version of the facts unless it is "blatantly contradicted by the record, so that no

23   reasonable jury could believe it." *Orn*, 949 F.3d at 1171 (quoting *Scott*, 550 U.S. at 380). Here,

24   video footage, police photographs, Gomez's sworn deposition testimony, and expert

25   reconstructions of the shooting all support Gomez's version of the facts. *See* Section I-A, *supra*

26   (factual background). On that version of the facts, Officer Fachko stood about 2.2 feet from

27   Gomez's driver's side window when he fired three shots at Gomez. Fries Decl. ¶ 8, Ex. 2. The

28

19

United States District Court
Northern District of California

shots' trajectory—most clearly illustrated by a police photograph—was from the driver's side of the car, not its front. *Id.* ¶ 7, Ex. 1. Thus, as in *Orn* and *Villaneuva*, the Court must credit plaintiff's version of the facts and deny qualified immunity. *See Villanueva*, 986 F.3d at 1170 ("[t]aking the facts in the light most favorable to the plaintiffs" as to path of car); *Orn*, 949 F.3d at 1178 (same).

Second, Defendants argue that Gomez cannot overcome qualified immunity by "retaining experts who contend[] the officer 'could have taken other actions in his confrontation with [Gomez].'" Reply at 8 (quoting *Reynolds v. County of San Diego*, 858 F. Supp. 1064, 1072 (S.D. Cal 1994), *aff'd in part and rev'd in part*, 84 F.3d 1162 (9th Cir. 1996), *overruled on other grounds by Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997)). Defendants mischaracterize Gomez's proffered expert testimony. Neither of Gomez's two expert witnesses merely "contend that [the officer] could have taken other actions in his confrontation with [Gomez]." *Reynolds*, 858 F. Supp. at 1072. Instead, forensics expert Jason Fries proffers three-dimensional reconstructions of the shooting to show that (1) Officer Fachko was 2.2 feet to the side of Gomez's car, away from its path of travel; and (2) the turn radius of Gomez's car was too wide to have hit Officer Fachko. Fries ¶¶ 7, 21 & Exs. 1, 6. Former police officer Scott DeFoe—on whom the Court need not rely to deny qualified immunity—proffers that Officer Fachko violated police training and policies. ECF No. 54. Thus, Defendants' characterization of Gomez's proffered expert testimony is inaccurate. Moreover, the proffered testimony addresses appropriate topics for evaluating an officer's defense of qualified immunity. *See, e.g.*, *Smith*, 394 F.3d at 703 (considering expert testimony on police policies); *Est. of Lopez by & through Lopez v. Gelhaus*, 871 F.3d 998, 1008 (9th Cir. 2017) (considering experts' "three-dimensional models" of police shooting).

Lastly, Defendants assert without citation that "Ninth Circuit precedent published after 2017—including *Villanueva* and *Orn*—may not be considered in determining whether the contours of the constitutional rights were clearly established at the time of the incident." Reply at 7. Defendants misstate the import of *Villaneuva* and *Orn*. Neither case stopped at merely the first

Case No. 19-CV-05266-LHK
ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1    step of the qualified immunity analysis. Rather, both cases held not only that officers had violated

2    constitutional rights, but also that those rights were *already* clearly established *at the time of the*

3    *police shootings in those cases*. *See Orn*, 949 F.3d at 1180 (holding right clearly established);

4    *Villanueva*, 986 F.3d at 1173 (same). The shootings in those cases occurred on October 12, 2011

5    and July 3, 2016, respectively. *Orn*, 949 F.3d at 1171; *Villanueva*, 986 F.3d at 1162. Thus, at the

6    time of Gomez's shooting in October 21, 2017, it had long been clearly established that facts close

7    to those in *Villaneuva* and *Orn* could defeat qualified immunity. In other words, "[i]n both cases

8    the courts were examining the clarity of the law long before the time of the incident here."

9    *Capoeman v. Reed*, 754 F.2d 1512, 1515 (9th Cir. 1985) (weighing cases that were decided after

10   challenged incident).

11          In sum, viewing the facts in the light most favorable to Gomez, Officer Fachko is not

12   entitled to qualified immunity.

13   **C.   There are genuine disputes of material fact as to Gomez's claims under California**
     **law.**
14

15          Lastly, Defendants cursorily move for summary judgment on Gomez's claims under

16   California law. Mot. at 19–20. Gomez claims that Officer Fachko (1) committed battery and

17   negligence; and (2) violated the Bane Civil Rights Act, Cal. Civ. Code § 52.1. As to the battery

18   and negligence claims, Defendants argue that they fail because "Officer Fachko's decision to use

19   deadly force[] was reasonable." Mot. at 19. Yet as detailed above, there is a genuine dispute of

20   material fact as to whether Officer Fachko acted reasonably. Viewing the facts in the light most

21   favorable to Gomez, Officer Fachko in fact violated Gomez's clearly established constitutional

22   rights. *See* Section III-B, *supra* (qualified immunity analysis). Thus, the Court denies Defendants'

23   motion for summary judgment as to the battery and negligence claims.

24          As for the Bane Civil Rights Act ("Bane Act") claim, Defendants argue that "Gomez

25   cannot show that Officer Fachko had the *specific intent* to violate Gomez' constitutional rights."

26   Mot. at 20 (emphasis added) (citing *Reese v. Cnty of Sacramento*, 888 F.3d 1030, 1043 (9th Cir.

27   2018)). Defendants are incorrect. As the Ninth Circuit held in *Reese*, "reckless disregard for a

28

United States District Court
Northern District of California

21

Case No. 19-CV-05266-LHK
ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

United States District Court
Northern District of California

1    person's constitutional rights is evidence of a specific intent to deprive that person of those

2    rights." *Reese*, 888 F.3d at 1045 (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)).

3           Here, viewing the facts in the light most favorable to Gomez, the qualified immunity

4    analysis above shows that Officer Fachko acted with reckless disregard for Gomez's constitutional

5    right to be free from excessive force. *See* Section III-B, *supra*. Specifically, Officer Fachko fired

6    three shots at Gomez while Gomez's car was stopped and boxed in by two police SUVs, Gomez's

7    hands were up, and nobody was in the path of Gomez's vehicle. *Id.* Thus, summary judgment is

8    inappropriate on the Bane Act claim.

9           Indeed, on reply, Defendants appear to recognize the weakness of their position by

10   abandoning their attack on the Bane Act claim. Despite Gomez's arguments in opposition,

11   Defendants' reply brief does not analyze the Bane Act at all. Reply at 9; *see also, e.g.*, *Maciel v.*

12   *Cate*, 731 F.3d 928, 932 (9th Cir. 2013) (holding that a party ""forfeited [an] argument by failing

13   to address it in his reply brief"). Accordingly, the Court denies Defendants' motion for summary

14   judgment as to the Bane Act claim as well.

15   **IV.    CONCLUSION**

16          For the foregoing reasons, the Court DENIES Defendants' motion for summary judgment.

17          Moreover, as stated above, Gomez did not oppose Defendant's motion for summary

18   judgment as to Gomez's claims for (1) denial of medical care under 42 U.S.C. § 1983 against

19   Officer Fachko (Count 2); (2) municipal liability for an unconstitutional custom, practice, or

20   policy under 42 U.S.C. § 1983 against the City of Santa Clara (Count 3); (3) municipal liability for

21   ratification of a constitutional violation under 42 U.S.C. § 1983 against the City of Santa Clara

22   (Count 4); and (4) municipal liability for failure to train under 42 U.S.C. § 1983 against the City of

23   Santa Clara (Count 5). ECF No. 1. Instead, Gomez dismissed these claims. Thus, the Court

24   DISMISSES these claims with prejudice.

25          Accordingly, Gomez's remaining claims for trial are (1) excessive force in violation of the

26   Fourth Amendment under 42 U.S.C. § 1983 against Officer Fachko (Count 1); (2) battery under

27   California law against Officer Fachko and the City of Santa Clara (Count 6); (3) negligence under

28
                                                      22

California law against Officer Fachko and the City of Santa Clara (Count 7); and (4) violation of the Bane Civil Rights Act, Cal. Civ. Code § 52.1, against Officer Fachko and the City of Santa Clara (Count 8). Id.

**IT IS SO ORDERED.**


Dated: April 30, 2021

_Lucy H. Koh_
LUCY H. KOH
United States District Judge